875 F.2d 316
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramona JACKSON, Defendant-Appellant.
 No. 88-5124.
 United States Court of Appeals, Fourth Circuit.
 Argued March 9, 1989.
Decided May 12, 1989.
 
 James Dowd Turner (Thomas, Ballenger, Vogelman and Turner on brief) for appellant.
 William G. Otis, Special Assistant United States Attorney (Henry E. Hudson, United States Attorney, Cathleen A. Tutty, Special Assistant on brief) for appellee.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and ROBERT J. STAKER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Ramona Jackson, pursuant to a conditional plea bargain, pled guilty to a charge of possession with intent to distribute less than 500 grams of cocaine in violation of 21 U.S.C. Sec. 841(a)(1). The plea bargain and plea provided her with the right to bring this appeal contending that the district court erred in denying her motion to suppress evidence. We affirm.
 
 
 2
 Jackson deplaned at the Washington National Airport from a Pan Am air shuttle from New York City on the evening of May 10, 1988. Soon thereafter she was approached by a Loudoun County Deputy Sheriff assigned to a Drug Enforcement Administration task force. The officer was in plain clothes but identified himself with a badge as a member of the task force. He was soon joined by two other plain-clothed officers.
 
 
 3
 The evidence at the suppression hearing consisted only of the testimony of the Deputy Sheriff and Jackson. Their testimony conflicted. According to the Deputy, he asked permission to search her travel bag that she was wearing over her shoulder, and she responded:
 
 
 4
 ... you want to look in my bag? And I said, yes, if that's okay. And she said, if it's okay with you, it's okay with me. And I said, if it is okay, I would like to look in your bag. At which time Special Agent Rodgers, correction, Special Agent Lynch who was with me stated, well, if you give us permission, then it's okay. And she said, well, if it's okay. And then she took one of the straps of her shoulder bag and displayed it open and began to take the articles out of her bag.
 
 
 5
 The officer testified that after Jackson removed several articles of clothing from the bag, she told him there was nothing else inside except her panties. Looking inside the bag, however, he saw three pairs of men's gym socks. He stated that he had seen socks used on previous occasions to conceal narcotics. He reached into the bag, took one of them, and felt a plastic substance inside the sock. He then discovered several zip-lock plastic baggies that contained what he believed to be cocaine or "crack cocaine." Following this discovery, Jackson was arrested.
 
 
 6
 According to Jackson, after the officer's initial approach, he asked for permission to search her bag. She responded by asking the officer whether she was required to allow him to search it. She testified that the officer evaded the question concerning the legality of the search and concerning what was required of her, and that she refused to turn her bag over to them. Instead, she took the contents of the bag out piece by piece. After she informed them that the bag was empty, the deputy, according to Jackson, without her consent, reached into her bag and removed the socks.
 
 
 7
 After the suppression hearing, the district court found
 
 
 8
 [The deputy] was not standing in her path for her to exit the airport, did not touch the defendant nor display any firearm.... [H]e asked her if he could search the bag that she was carrying. She said, asked some question whether or not it was okay. One of the Virginia State Police officers then told her that they could search the bag if she gave permission. She then said it was okay and began taking clothing out of the bag. But after removing most of the clothing from the bag this officer observed three pairs of men's gym socks in the bag. He reached in and picked up one of the socks and felt something in the sock, felt like plastic, which turned out to be crack.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 I would find that this is a legitimate encounter by this officer, that the search was done with the consent of the defendant....
 
 
 12
 The issue of whether the defendant has consented to a search is, of course, a question of fact, and the determination of the district court will be reversed only if it is clearly erroneous. United States v. Poole, 718 F.2d 671, 674 (4th Cir.1983). Viewing in the light most favorable to the government, we conclude that the district court's determination is not clearly erroneous. The judgment of the district court is affirmed.
 
 
 13
 AFFIRMED.